# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| MITOCHON PRACTICE MANAGEMENT, LLC, <br><br> **Plaintiff,** <br><br> vs. <br><br> HEALTHCARE TECHNOLOGY ALLIANCE, LLC, ET AL., <br><br> **Defendants.** | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:13CV177DAK <br><br> Judge Dale A. Kimball |

This matter is before the court on Defendants Healthcare Technology Alliance, LLC, ("HTA"), Akamai Practice Management LLC ("Akamai"), Medtrak Data Systems, Inc. ("Medtrak"), Valli Information Systems, Inc. ("Valli"), Robert Putnam, Mark Service, and Robert Jenkins (collectively "HTA Defendants") Motion to Dismiss. On August 27, 2013, the court held a hearing on the motion. At the hearing, Plaintiff was represented by John Delaney and the HTA Defendants were represented by Ryan Hancey. The court took the matter under advisement. The court has considered carefully the memoranda submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Mitochon Practice Management Systems, LLC, is in the health care industry. Its

affiliate, Mitochon Systems Inc. ("MSI") offers a cloud computing-based electronic medical records system to healthcare providers, which electronically keeps track of patient medical files and other data. MSI acted as Plaintiff's promoter prior to Plaintiff's organization and all of the actions of MSI were subsequently ratified by Plaintiff after it was organized.

In response to customer demand for a comprehensive electronic billing system for healthcare providers, MSI began a search to acquire suitable computer software for Plaintiff's eventual formation. In mid-2012, MSI began negotiating with the R.J. Nielsen Family Partnership LLC ("RJNFP"), a member of HTA, to purchase the license to a practice management software. MSI's negotiations to acquire the license were primarily with R.J. Nielsen, a managing member of RJNFP. However, the other HTA members were involved with and aware of the negotiations. RJNFP presented this opportunity to HTA and its members, but HTA rejected it and refused to sell MSI a license to the practice management software.

After HTA refused to sell MSI the license to the practice management software, Nielsen informed MSI that because RJNFP was a member of HTA, RJNFP had the right to transfer RJNFP's interest in a non-exclusive license to HTA's practice management software. Nielsen informed MSI that under the HTA Operating Agreement, RJNFP had the right to withdraw as an interest owning member of HTA, whereupon HTA would be required to provide RJNFP with practice management software and the associated source code for the software. RJNFP would then have a non-exclusive license to sell or transfer the right to use to MSI.

The HTA Operating Agreement states:

> No withdrawing Member shall have any rights to any assets of the
> Company other than a withdrawing Member shall be entitled to
> receive complete, non-exclusive rights to all software intellectual

property that has been developed by the Company as of the date of
withdrawal including the current version of the source code,
documentation and ancillary intellectual property that may be
required for its use. Said entitlement is contingent upon the
withdrawing member having been a member in good standing of
the Company for no less than six consecutive months immediately
preceding the date of withdrawal and settlement in full by the
withdrawing member of any outstanding indebtedness to the
Company including any Assessment Advances. Said settlement
shall occur within one hundred and twenty (120) calendar days
from the date of withdrawal, or Member shall forfeit said
Member's entitlement as described above and the Company shall
forgive in full any outstanding Assessment Advances.

Plaintiff later learned that the HTA Operating Agreement did not have any provisions that

would have given HTA or its members any right of first refusal for a member's departure and

subsequent transfer of the non-exclusive license to HTA's software and source code. Even if

there were such a right, HTA previously rejected the opportunity to sell the license to the source

code and software to MSI after RJNFP presented it to HTA, and RJNFP was free to pursue the

opportunity on its own. In fact, the HTA Operating Agreement specifically permits HTA's

members to compete with HTA and/or the other members.

In October 2012, MSI, as Plaintiff's promoter, entered an IT Purchase Agreement with

RJNFP for the purchase of its practice management software ("intellectual technology" or "IT")

and source code for the intellectual technology. Under the IT Purchase Agreement, RJNFP

agreed to assign RJNFP's interest in the intellectual technology to Plaintiff and to provide

Plaintiff with the source code in exchange for payment. Plaintiff agreed to make an initial

payment of $110,000 and several subsequent payments of $50,000 to RJNFP. RJNFP also

represented and warranted that it possessed the non-exclusive right to sell, transfer, and assign

3

the intellectual technology and associated source code.

MSI expected the immediate transfer of the intellectual technology and source code. Accordingly, MSI informed hundreds of potential customers of the anticipated practice management system that Plaintiff would soon offer. MSI also promised other potential customers that Plaintiff would soon sell a license to Plaintiff's own cloud computing based source code developed using the IT and source code. However, RJNFP did not perform its obligation to deliver the IT and source code to Plaintiff as provided under the IT Purchase Agreement. Thus, Plaintiff was unable to satisfy the anticipated demand for the product.

At the time RJNFP entered into the IT Purchase Agreement with MSI, it had not formally withdrawn as a member of HTA. Plaintiff alleges that RJ Nielsen informed HTA and its other members, collectively the HTA Defendants, of its intention to withdraw in order to effectuate its contractual promise under the IT Purchase Agreement to deliver the IT and source code to Plaintiff. After learning of RJNFP's assignment of its interests to Plaintiff and intention to deliver the source code to Plaintiff, the HTA Defendants anticipatorily breached the HTA Operating Agreement by expressly repudiating any obligation to deliver the IT and source code upon withdrawal and thus denying RJNFP access to the source code.

Instead of complying with the HTA Operating Agreement as written, the HTA Defendants demanded that RJNFP agree to amend retroactively the terms of the HTA Operating Agreement in an effort to deny Plaintiff access to the IT and source code. Plaintiff alleges that the HTA Defendants' actions were intentional and specifically designed to interfere with Plaintiff's prospective benefits under its IT Purchase Agreement with RJNFP. Plaintiff further alleges that the HTA Defendants had actual knowledge of the prospective economic benefits

Plaintiff anticipated receiving from the products Plaintiff anticipated selling as a result of its access to the IT and source code.

Plaintiff sent a letter to HTA in December 2012 demanding that HTA cease and desist its interference with Plaintiff's rights under the IT Purchase Agreement. The letter stated that HTA's actions were damaging Plaintiff and interfering with Plaintiff's current and prospective business relationships. HTA's attorney responded that HTA would not provide RJNFP with access to the IT and source code until RJNFP paid the monies that RJNFP still owed to HTA as a withdrawing member pursuant to Section 16 of the HTA Operating Agreement. The letter further stated that HTA intended to comply with its obligations under the HTA Operating Agreement, explaining that it had 90 days from RJNFP's effective withdrawal from HTA to provide RJNFP with an accounting of the amounts RJNFP still owed HTA.

HTA provided an accounting on the last date allowed by the operating agreement and informed RJNFP's counsel that HTA would not provide the IT or source code to RJNFP even if it paid the amount it owed HTA because it had determined that RJNFP was "not a member in good standing" of HTA prior to its withdrawal. RJNFP had never been informed prior to this letter that HTA did not consider it a member in good standing.

Plaintiff alleges that HTA's refusal to deliver the IT and source code was an intentional repudiation of its obligations under the HTA Operating Agreement, and such actions were intentional, malicious, unconscionable, oppressive, and taken with conscious disregard for Plaintiff's well being.

Plaintiff filed this action, asserting claims for intentional interference with contractual relations and prospective economic advantage against HTA, its members, and the individual

principals of those members.

## DISCUSSION

The HTA Defendants move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Specifically, the HTA Defendants contend that Plaintiff's claims fail for three reasons: (1) Plaintiff fails to state its intentional interference claims because it has not pled facts showing that RJNFP was entitled to the IT and source code at the time it withdrew from HTA; (2) Putnam, Service, and Jenkins–the individual principals of the HTA members–are not personally liable for the members' purported breach of the HTA Operating Agreement; and (3) Akamai, Medtrak, and Valli, as members of HTA, are protected from liability incurred by HTA under the Utah Revised Limited Liability Act.

As a preliminary matter, Plaintiff argues that the HTA Defendants' motion to dismiss is untimely because they already answered the Complaint. The liberal language of Rule 12(h)(2), in certain circumstances, allows courts to consider Rule 12(b)(6) motions even after a responsive pleading has been filed. The HTA Defendants pled an affirmative defense in their Answer stating that Plaintiff failed to state a claim upon which relief can be granted. Some courts have allowed post-Answer Rule 12(b)(6) motions in these circumstances. *Rodgers v. D.F. Freeman Contractors, Inc.*, 1989 WL 134280, *1 (D. Kan. 1989). Moreover, the motion serves the same function as a motion for judgment on the pleadings and can be regarded as one. *Williamson v. Bernalillo County Sheriff's Dept.*, 108 F.3d 1389, *1 (10th Cir. 1997) (unpublished). The court will construe the motion as a Motion for Judgment on the Pleadings, which operates under the same standards as a motion to dismiss.

6

In addition, Plaintiff contends that the court cannot take judicial notice of the HTA Operating Agreement attached to the HTA Defendants' motion because the accuracy of it is subject to question.  The court, however, can decide the motion without taking judicial notice of the HTA Operating Agreement.  The HTA Operating Agreement is referenced in the Complaint and none of the provisions at issue in the motion appear to be disputed.

## 1.  Intentional Interference Claims

The tort claim of intentional interference with contract relations is designed to protect existing contractual relationships.  In this case, Plaintiff asserts it has an existing contractual relationship with RJNFP under the IT Purchase Agreement.  However, the HTA Defendants contend that Plaintiff does not allege that they induced RJNFP to breach the IT Purchase Agreement.  Rather, Plaintiff alleges that the HTA Defendants breached the HTA Operating Agreement, a completely separate contract, which made it impossible for RJNFP to perform the IT Purchase Agreement with Plaintiff.

The HTA Defendants claim that no case law supports a theory such as the one advanced by Plaintiff.  However, Plaintiff alleges clearly the acts that the HTA Defendants took to cause RJNFP's breach of the IT Purchase Agreement.  Plaintiff alleges that these acts were taken intentionally to make it impossible for RJNFP to perform its obligations under the IT Purchase Agreement.  Whether those acts also constituted a breach of the HTA Operating Agreement is irrelevant.  The acts are relevant to state a claim for intentional interference with contractual relations and prospective economic relations.  *See Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 301 (Utah 1982) (requiring "conduct which 'intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or

otherwise causing third person not to perform contract'") (citations omitted).

The HTA Defendants cite to a case in which the court found that a bank was not liable to a subcontractor on a project for failing to disburse funds because the subcontractor did not allege any fact that would support the inference that the bank withheld funds from the general contractor for the specific purpose of harming the subcontractor's contract with the general. *Ira G. Steffy & Sons v. Citizens Bank of Penn.*, 7 A.3d 278, 289 (Pa. Super. Ct. 2010). However, the case is factually distinct from the present case. The relationships in this case are closer and Plaintiff has specifically pleaded a factual background giving context to its assertion that the acts were taken intentionally to prevent it from obtaining the intellectual property from RJNFP.

The HTA Defendants further contend that Plaintiff cannot assert that the HTA Defendants' actions fell outside their authority under the HTA Operating Agreement. The HTA Operating Agreement states that RJNFP's good standing is a prerequisite to its entitlement to the intellectual property upon withdrawal. The HTA Defendants claim that Plaintiff was required to allege that RJNFP was in good standing, and Plaintiff could not know the status of RJNFP's membership for the six months leading up to its withdrawal because Plaintiff was not an HTA member.

However, the HTA Defendants' argument that their conduct was justified because RJNFP was not a member in good standing improperly seeks to introduce facts outside the pleadings, which is inappropriate on a Rule 12(b)(6) motion. The court cannot determine at this stage of the litigation whether the HTA Defendants properly relied on the "member in good standing" provision of the HTA Operating Agreement to deny RJNFP the intellectual property upon withdrawal. Plaintiff claims that the HTA Defendants's determination that RJNFP was not in

8

good standing was arbitrary, did not provide any explanation, and was not given until after the

six month period expired and RJNFP was in fact withdrawing. These allegations call into

question whether the HTA Defendants made the decision in good faith. Plaintiff has adequately

pleaded that RJNFP was entitled to the intellectual property upon withdrawal and that the HTA

Defendants intentionally took steps to interfere with that right. Therefore, the court denies the

HTA motion to dismiss.

**2. Individual Liability**

The HTA Defendants contend that Putnam, Service, and Jenkins cannot be liable for

breaching the HTA Operating Agreement because they are not parties to it. The HTA Operating

Agreement is a contract between the members. The HTA Defendants claim that Putnam,

Service, and Jenkins are corporate officers who are immune from liability on corporate contracts

when they are acting in their official capacity, even if they took the actions that resulted in the

breach. *Reedeker v. Salisbury*, 952 P.2d 577, 582 (Utah Ct. App. 1998). But Plaintiffs' claims

are tort claims, not contract claims. Plaintiff sufficiently alleges that Putnam, Service, and

Jenkins individually took acts that constitute intentional interference with contractual relations

and prospective economic relations.

The HTA Defendants further argue that the officers and members of corporate entities are

generally not liable for tortious acts committed by those entities simply by virtue of their holding

corporate office. *D'Elia v. Rice Development, Inc.*, 147 P.3d 515, 524 (Utah Ct. App. 2006).

Rather, such individual officers "only incur personal liability by participating in the wrongful

activity." *Id.* But the Complaint alleges that HTA's anticipatory breach was "spearheaded" by

the individuals. Under Utah law, a director or officer can be liable for tortious acts that he or she

personally committed or in which he or she personally participated. *Armed Forces Exchange v. Harrison*, 70 P.3d 35, 41 (Utah 2003). This rule exists because "to permit an agent of a corporation, in carrying on its business, to inflict wrong and injuries upon others, and then shield himself from liability behind his vicarious character, would both sanction and encourage the perpetration of flagrant and wanton injuries by agents of insolvent and irresponsible corporations." *Id.*

Plaintiff alleges in its Complaint that Putnam, Service, and Jenkins knew of and participated in the tortious conduct in multiple portions of the Complaint. These allegations are sufficient. At this stage of the litigation, the court cannot parse the meaning of spearheaded. The fact that the HTA Defendants deny Plaintiff's allegations does not render them any less well-pled.

### 3. Member Entity Liability

The HTA Defendants also argue that because HTA was an active Utah limited liability company at all relevant times, its members–Akamai, Medtrak, and Valli–are protected from liability under the Utah Revised Limited Liability Company Act ("LLC Act"). The LLC Act provides that "no organizer, member, manager, or employee of a company is personally liable under a judgment, decree, or order of a court, or in any other manner, for a debt, obligation, or liability of the company or for the acts or omissions of the company or of any other organizer, member, manager, or employee of the company." Utah Code Ann. § 48-2c-601.

Plaintiff alleges that Akamai, Medtrak, and Valli "anticipatorily breached the HTA Operating Agreement," In its opposition to the HTA's Defendants' motion to dismiss, Plaintiff sought leave to amend to include more specific allegations that Akamai, Medtrak, and Valli

committed the above tortious conduct in their individual capacities rather than as agents of HTA. As with the individual defendants, the member entities could be subject to liability for such actions. However, at the hearing on the motion to dismiss, Plaintiff argued that the allegations against the member entities were sufficient based on the same reasoning argued as to the individuals.

Whether the actions alleged in the Complaint were taken by the individual member controlling the member entity or the member entity itself may be unclear until discovery takes place. Given the factual context provided in the Complaint, the court concludes that the allegations against the member entities are sufficient for the case to proceed to discovery. *See d'Elia v. Rice Development, Inc.*, 147 P.3d 515, 525 (Utah Ct. App. 2006) ("We are persuaded by those authorities that hold that both limited liability members and corporate officers should be treated in a similar manner when they engage in tortious conduct."). Accordingly, the HTA Defendants' motion to dismiss is denied.

## CONCLUSION

For the reasons stated above, the HTA Defendants' Motion to Dismiss is DENIED.

Dated this 4th day of September, 2013.

BY THE COURT:

_____
Dale A. Kimball,
United States District Judge

11