# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DIVISION, DISTRICT OF UTAH

| | | |
|---|---|---|
| MITOCHON PRACTICE MANAGEMENT SYSTEMS, LLC, a California limited liability company, | : : : | |
| Plaintiff, | : | |
| v. | : | Civil No. 2:13-cv-00177 |
| HEALTHCARE TECHNOLOGY ALLIANCE, LLC, a Utah limited liability company; RICHARD J. NIELSEN, an individual; R. J. NIELSEN FAMILY PARTNERSHIP, LLC, a Utah limited liability company; AKAMIA PRACTICE MANAGEMENT, LLC, a Hawaii limited liability company MEDTRAK DATA SYSTEMS, INC., a Texas corporation; VALLI INFORMATION SYSTEMS, INC., an Idaho corporation; ROBERT PUTNAM, an individual; MARK SERVICE, an individual; ROBERT JENKINS, an individual, | : : : : : : : : | MEMORANDUM DECISION & ORDER<br><br>DISTRICT COURT JUDGE DALE A. KIMBALL<br><br>MAGISTRATE JUDGE DUSTIN B. PEAD |
| Defendants. | : | |

Currently before this Court is Defendants and cross claimants Richard Nielsen ("Nielsen") and the R. J. Nielsen Partnership ("Nielsen Partnership") (collectively,

"Defendants") motion to withdraw admissions (doc. 63).[1] The court has carefully reviewed the memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. *See* DUCivR 7-1(f).[2]

## I. Background

Plaintiff Mitochon Practice Management Systems, LLC ("Plaintiff") is a business involved in the healthcare industry. In 2012, Plaintiff began negotiations with Defendant Healthcare Technology Alliance ("Healthcare Technology") for the purchase of "practice management" system software--a comprehensive electronic billing system for healthcare providers (doc. 2, ¶¶ 16-18).[3] Healthcare Technology is a Utah based health care software provider owned by Defendant Akamai Practice Management, LLC, Defendant MedTrak Data Systems, Inc., and Defendant Valli Information Systems, Inc. (doc. 2, ¶5). At the time of Plaintiff's negotiations with Healthcare Technology, Defendants were also named owners of the company (doc. 63).

Despite negotiations, the parties were unable to reach an agreement and Healthcare

---

[1] Nielsen is the managing member of Nielsen Partnership (doc. 2, ¶3). Based upon Nielsen's status as an individual and Nielsen Partnership's status as a business entity, the court recognizes each defendant's varied involvement in the case. However, despite minor factual nuances, for purposes of this ruling and overall ease of understanding, the court shall refer to Nielsen and Nielsen Partnership collectively as Defendants throughout.

[2] This matter is before Magistrate Judge Dustin Pead pursuant to a 28 U.S.C. §636(b)(1)(A) referral from District Court Judge Dale Kimball (doc. 64).

[3] As set forth in the complaint, negotiations on Plaintiff's behalf were conducted by its affiliate and promoter Mitochon Systems, Inc. ("MSI") ( doc. 2, ¶16).

2

Technology declined to sell Plaintiff the practice management software. Thereafter, Defendants informed Plaintiff that, as a member of Healthcare Technology and as set forth under the terms of company's Operating Agreement ("Operating Agreement"), they could withdraw as a member of the company and transfer their interest in the practice management software, along with the associated source code, to Plaintiff (doc. 2, ¶19).[4]

Accordingly, on October 9, 2012, Plaintiff and Defendants entered into a IT Purchase Agreement ("IT Agreement") (doc. 2-2). Under the terms of the IT Agreement, Plaintiff agreed to pay for the assignment of Defendants' interest in the practice management software and source code (doc. 2, ¶22).[5] Specifically, under section 2.A of the agreement, Defendants' warranted that they "possess[ed] the non-exclusive right and authority to sell, transfer and assign the Intellectual Technology and the associated source code. . . " (doc 2-2). However, despite the terms of the agreement, Defendants ultimately failed to perform their obligation to deliver the software and source code to Plaintiff (doc. 2, ¶25).

Plaintiff asserts that Defendants' failure to deliver the assignment of interest was based upon the remaining members of Healthcare Technology's anticipatory breach of the company's Operating Agreement "by expressly repudiating any obligation to deliver the [software] and the

---

[4]In relevant part, the Healthcare Technology Operating Agreement states:

"No withdrawing Member shall have any rights to any assets of the Company other than a withdrawing Member shall be entitled to receive complete, non-exclusive rights to all software intellectual property that has been developed by the Company as of the date of withdrawal including the current version of the source code, documentation and ancillary intellectual property that may be required for its use." (doc. 21-1).

[5]Pursuant to Section 4 of the IT Agreement, Plaintiff agreed to make an initial payment of $110,00 and several subsequent payments of $50,000 to Defendants (doc. 2, ¶23).

Source Code upon withdrawal, and thus denying [Defendants] access to the Source Code." (doc. 2, ¶27). Plaintiff further alleges that Healthcare Technology's motivation in breaching and retroactively amending the terms of the Operating Agreement was to prevent the Defendants from assigning the software to Plaintiff under the terms of their IT Agreement (doc. 2, ¶¶28-30).

On March 12, 2013, Plaintiff filed its complaint charging Defendants with breach of the parties IT Agreement and seeking specific performance thereof (doc. 2).[6] On May 3, 2013, Defendants filed a cross-claim against the other named defendants, including Healthcare Technology, alleging breach of the Operating Agreement, interference with prospective contract and breach of fiduciary duties (doc. 21).

On April 14, 2014, Healthcare Technology served Defendants with their First Set of Discovery Requests, including twenty (20) requests for admission (doc. 65-2). Defendants' responses to the requests for admission were due thirty (30) days from service, or by May 19, 2012. Defendants failed to meet the thirty day deadline, instead simultaneously filing their responses (doc. 65-1) and currently pending motion to withdraw admissions (doc. 63) on June 18, 2014.[7] In their responses, Defendants admit requests 3, 5, 6, 7, 8, 13, 15 and 16, and deny requests 1, 2, 4, 9, 10, 11, 12, 14, 17, 18, 19 and 20 (doc. 65-1).

---

[6]Plaintiff alleges additional causes of action against the other named defendants for intentional interference with contractual relations, and intentional interference with prospective economic advantage (doc. 2).

[7]Although not relevant under Rule 36, Defendants offer, by way of explanation for their untimely responses, that attorney Ken Johnsen became suddenly and unexpectedly ill and that attorney Bryan Fishburn was unable to take over the case until sometime after the admissions were due (doc. 66).

## II. Analysis

Pursuant to Federal Rule of Civil Procedure 36(a)(3) a request for admission "is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection . . ." Fed. R. Civ. P. 36 (a)(3). Once a matter is admitted,

> it is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

Fed. R. Civ. P. 36(b). Thus, as set forth under the rule, amendment or withdrawal is permitted when "(1) it would promote the presentation of the merits of the action and (2) if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *Questar Exploration & Production, Co. v. Lambeth,* 2:08-cv-455-TS, 2009 U.S. Dist. LEXIS 117673, at *4 (D. Utah Dec. 17, 2009 ) (unpublished). The court discusses each of these factors herein.

### 1. Merits Of The Action

Under the first factor, the court focuses on "the importance of having the action resolved on the merits, and is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Raiser v Utah County*, 409 F.3d 1243, 1246 (10th Cir. 2005) (citing, *Perez v. Miami-Dade County,* 297 F.3d 1255, 1265 (11th Cir. 2002) (internal quotation and citation omitted)). Defendants argue that withdrawal of the admissions is imperative to its presentation of its case, and that absent withdrawal Defendants can not have a fair trial (doc. 63). Despite Healthcare Technology's claims to the contrary (doc. 65), the court

agrees and concludes that the admissions go to heart of Defendants' case and directly effect the merits of the action.

In failing to timely respond to the requests, Defendants admitted matters directly related to Healthcare Technology's claim that Defendant was not a "member in good standing" prior to its withdrawal from the company. Specifically, under Healthcare Technology's Operating Agreement, any entitlement to software rights by a withdrawing member is contingent upon the member's "good standing of the Company for no less than six consecutive months immediately preceding the date of withdrawal and settlement in full by the withdrawing member of any outstanding indebtedness to the Company. . ." (doc. 21-1). Thus, by admitting a failure to maintain good standing or the existence of a debt, Defendants' claim that Healthcare Technology wrongfully breached the Operating Agreement and failed to provide Defendants their rightful interest in the software could be compromised.[8]

Accordingly, the Court finds that the admissions at issue concede core elements of Defendants' case and that the merits of the action will be subserved by withdrawal of the admissions.

---

[8] By way of example, deemed admissions that could support a failure to be a member in good standing include admissions that Defendants: did not make a capital contribution (Request For Admission No.1), did not pay additional capital calls (Request For Admission No. 2), failed to forward documents to other Healthcare Alliance members (Request For Admission No. 4), participated in negotiations regarding the sale of the source code between July 10, 2012, and August 29, 2012 (Request For Admission No. 9), deceived Healthcare Alliance members concerning negotiations with Plaintiff (Request For Admission No. 10), did not possess a contractual right to the source code (Request For Admission No. 11), did not pay outstanding indebtedness to Healthcare Technology, acknowledged that the sale of software to Plaintiff would be detrimental to the interests of Healthcare Technology (Request for Admission No. 14) and owed Healthcare Technology $103,920.12 as of the date of its withdrawal (Request for Admission No. 19) (doc. 65-1).

## 2. Prejudice

The second factor focuses on the issue of prejudice. "The party who obtained the admission (here, the plaintiff) bears the burden of demonstrating to the court that withdrawal of the admission will [cause prejudice]. . ." *Ropfogel v. U.S.,* 138 F.R.D. 579, 582 (D. Kan. 1991). By way of instruction, the Tenth Circuit provides, "[m]ere inconvenience does not constitute prejudice for this purpose. 'The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission now has to convince the jury of its truth. Something more is required.'" *Raiser v. Utah County,* 409 F.3d 1243, 1246 (10th Cir. 2005) (quoting *Bergmann v. United States*, 820 F.2d 1117, 1121 (10th Cir. 1987)). Rather, "'[t]he prejudice contemplated by Rule 36(b) . . . relates to the difficulty a party may face in proving its case, *e.g.,* caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted.'" *Id.* (quoting, *Hadley v. United States,* 45 F.3d 1345, 1348 (9th Cir. 1995)).

Healthcare Technology asserts that it will be prejudiced if the deemed admissions are withdrawn because at this late juncture it is unable to conduct follow up discovery or serve additional production requests based upon Defendants' denials (doc. 65). Under the parties' original scheduling order, the fact discovery deadline was set for May 28, 2014 (doc. 61). Healthcare Technology's opposition, however, references a informal stipulation between the parties agreeing to extend the deadline to June 30, 2014 (doc. 65, p.2).[9] Given the parties' informal stipulation, along with Healthcare Technology's ability to file a formal motion

---

[9]The docket does not reflect the submission of a stipulated amended scheduling order filed with the court.

requesting an extension to conduct limited follow up discovery, the court finds that the prejudice alleged does not outweigh the court's interest in resolving the underlying dispute on its merits. *See Questar Exploration & Production v Lambeth,* 2:08-cv-455-TS, 2009 U.S. Dist. LEXIS 117673, at *7 (D. Utah Dec. 17, 2009 ) (unpublished) ("the need to expend additional time and resources to conduct additional discovery to convince the jury of its claim, without more, is not the kind of prejudice contemplated by Rule 36(b)).

Accordingly, for the reasons now stated herein, Defendants' motion to withdraw deemed admissions is GRANTED.

IT IS SO ORDERED.

DATED this 21st day of July, 2014.

BY THE COURT:

_____
Dustin B. Pead
U.S. Magistrate Judge